[Cite as *State v. Harrell*, 2024-Ohio-3029.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-0408(A) |
| | : | |
| OTHELLO HARRELL | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 9, 2024

. . . . . . . . . . .

ANTHONY D. MAIORANO, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Othello Harrell appeals from an order of the Clark County Court of Common Pleas which granted the State's motion that he be held without bond pending trial. For the reasons that follow, the trial court's order will be affirmed.

## I.    Facts and Procedural History

{¶ 2} In the summer of 2020, Springfield Police detectives received information that Harrell was dealing methamphetamine out of his apartment. An investigation was initiated, and a year later he was indicted by a Clark County grand jury as follows: one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), a felony of the first degree; one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the second degree; one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the second degree; one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the third degree; and one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the third degree. The indictment also included a forfeiture specification attached to four counts for $3,455 in U.S. currency.

{¶ 3} In January 2022, Harrell filed a motion to suppress.  He challenged the admissibility of evidence obtained from the searches of his home and cell phone and the lawfulness of a traffic stop and detention. After a hearing on the matter, the trial court overruled the motion in its entirety.

{¶ 4} On June 28, 2022, a jury trial commenced.  The evidence detailed the investigation of the Springfield Police Department, including evidence of two drug buys, the contents of Harrell's cell phone, and testimony from a confidential informant, co-defendants, and law enforcement. Harrell was found guilty as charged on all counts and was sentenced to an aggregate prison term of 22 to 27½ years. He was also fined more than $12,000, and the court ordered $3,455 forfeited in accordance with the specification.

{¶ 5} Harrell filed a timely appeal which raised four assignments of error. *State v. Harrell*, 2024-Ohio-981 (2d Dist.). We found that Harrell had been unlawfully detained by officers when they stopped the car he was driving while detectives were executing a search warrant on his house. Resultantly, we concluded that evidence obtained as a result of that unconstitutional seizure should have been excluded at trial. We also found, however, that because the State presented sufficient evidence on each of the charged offenses, double jeopardy did not preclude his being retried on all counts. We reversed his convictions and remanded the matter to the trial court.

{¶ 6} On March 29, 2024, Harrell was transferred from prison back to the Clark County Jail. The trial court set a bond hearing, and the State filed a motion to deny bail pursuant to R.C. 2937.222. The matter came before the trial court on April 12 for an evidentiary hearing, during which the State presented three exhibits and testimony from Detective Calvin Burch. A few days later, the court granted the State's motion, ordering that Harrell be held without bond pending a verdict in the re-trial of the case.

{¶ 7} Harrell has filed a timely appeal that raises two assignments of error.

## II.     Consideration of evidence at a bail hearing

{¶ 8} In his first assignment of error, Harrell contends that the trial court erred when it considered evidence presented during the original trial in 2022 when deciding to deny him bond. We disagree.

{¶ 9} In non-capital cases, bail is a constitutionally protected right in Ohio. Ohio Const., art. I, § 9. Considering that, the legislature promulgated a statutory process that a trial court must comply with before denying a defendant bail. R.C. 2937.222. The statute

states: "On the motion of the prosecuting attorney or on the judge's own motion, the judge shall hold a hearing to determine whether an accused person charged with . . . a felony of the first or second degree . . . shall be denied bail." R.C. 2937.222(A). At such a hearing, the defendant has the right to be represented by an attorney, the right to testify, the right to present witnesses and other information, and the right to cross-examine witnesses. R.C. 2937.222(A).

**{¶ 10}** It is Harrell's position that the trial court, for various reasons, should not have taken judicial notice of evidence from the 2022 trial. According to Evid.R. 201(A), a court may take judicial notice of "adjudicative facts; i.e., the facts of the case." Under Evid.R. 201(B), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

**{¶ 11}** However, based on the plain language of R.C. 2937.222(A), whether the previous trial evidence was admissible is irrelevant because "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [bail] hearing." *Accord State v. Dickey*, 2023-Ohio-705, ¶ 11 (1st Dist.) ("To be sure, in the denial of bail context, the rules of evidence do not apply."). That means a court might rely on (for example) hearsay evidence, unauthenticated videos, or in Harrell's case, past trial evidence. *Dickey* at ¶ 11.

**{¶ 12}** Because the statute is clear that the rules of evidence do not apply to bail hearings, allowing the court to consider a variety of information, Harrell's first assignment

of error is overruled.

### III.     Merits of the trial court's decision

{¶ 13} In his second assignment of error, Harrell argues that the trial court erred by not granting him bail.

{¶ 14} As previously noted, upon a motion from the State, R.C. 2937.222 requires a trial court to hold a hearing to determine whether a person charged with a first or second-degree felony should be held without bail pending trial. The "state has the burden of proving that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person and the community." R.C. 2937.222(A).

{¶ 15} The defendant may not be denied bail unless the court finds by clear and convincing evidence that the proof is evident or the presumption great that the accused committed the offense, finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community, and finds by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community. R.C. 2937.222(B). Clear and convincing evidence is evidence that will produce in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." *State v. McIntosh*, 2015-Ohio-2786, ¶ 7 (2d Dist.).

{¶ 16} The court, when determining whether the defendant poses a substantial risk of serious physical harm to any person or to the community and whether there are

conditions of release that will reasonably assure the safety of that person and the community, must consider all available information regarding all the following:

(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

(2) The weight of the evidence against the accused;

(3) The history and characteristics of the accused, including but not limited to:

    a. The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, and criminal history of the accused;

    b. Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶ 17} Before we can begin our analysis, however, we must determine the

standard of review to be applied by this Court, as it appears we have not settled on one to this point. *See State v. Mitchell*, 2019-Ohio-2465, ¶ 24 (2d Dist.) (declining to choose a standard because the trial court decision was correct under any standard); *State v. Reyes*, 2024-Ohio-977, ¶ 19 (2d Dist.). A review of other appellate districts' jurisprudence reveals there are currently multiple standards in use across the state.

{¶ 18} The Tenth District uses an abuse of discretion standard. *State v. Henderson*, 2017-Ohio-2678, ¶ 5 (10th Dist.); *State v. Foster*, 2008-Ohio-3525, ¶ 6 (10th Dist.). Its application of this standard is based on the fact that abuse of discretion is customarily used in habeas cases challenging excessive bail. *Foster* at ¶ 5. Lending further credence to this view, the Ohio Supreme Court, in dicta in a habeas corpus case, seemed to endorse the standard. *See Smith v. Leis*, 2005-Ohio-5125, ¶ 82 ("[I]t appears that the trial court would not have abused its discretion in denying bail pending Smith's retrial[.]").

{¶ 19} On the other hand, the Eleventh District has adopted the standard for suppression hearings. "[A]n appellate court reviewing a motion to deny bail is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo." *State v. Urso*, 2010-Ohio-2151, ¶ 47 (11th Dist.).

{¶ 20} The Sixth District Court of Appeals uses a standard consistent with review of cases involving "clear and convincing evidence." *See State v. Brown*, 2006-Ohio-3377, ¶ 25 (6th Dist.) (characterizing the issue as whether "sufficient evidence" supported the

trial court's findings). Finally, the Fifth District, much like this one, has not officially adopted a standard, noting only, "we find the trial court's decision is clearly supported by clear and convincing evidence and the trial court did not err in denying bail." *State v. Michael*, 2010-Ohio-2587, ¶ 32 (5th Dist.).

{¶ 21} Based on the Tenth District's reasoning that abuse of discretion is used in federal habeas cases challenging excessive bail and the Supreme Court's implicit guidance, we now adopt abuse of discretion as the standard of review for bail cases under R.C. 2937.222.

{¶ 22} We turn to the analysis of Harrell's case. At the April 12, 2024 bond hearing, Detective Burch testified that he became involved with Harrell through a confidential informant (CI) who said she received drugs from the man. In the weeks that followed, Detective Burch facilitated controlled buys in which the CI purchased narcotics from Harrell. On one occasion, Harrell came to the CI's house, and another time, the CI bought seven to eight grams of meth from him at his residence. Officers observed the exchanges.

{¶ 23} According to Detective Burch, the investigation expanded to other individuals associated with Harrell, and several of them acknowledged selling drugs for him. Eventually, the investigation led to police executing a search warrant at Harrell's home. During that search, Springfield police found scales, baggies with suspected meth inside, and loose ammunition – some of which were 7.62 rounds, commonly used in AK-47s. Detective Burch reported that the CI had observed Harrell with firearms, including a rifle. Additionally, at least 10 phones were collected from seven associates of Harrell; all the devices had some nexus to drug trafficking. The State also presented several exhibits

which indicated Harrell's involvement in providing "ice" and crack cocaine in various quantities to individuals. Detective Burch told the court that these people would then turn around and sell the contraband to others.

{¶ 24} Based on the testimony and evidence presented at the hearing, we agree with the trial court that it was evident that Harrell had committed the crimes with which he was charged. Harrell did not challenge that element at the hearing. His counsel conceded that "we're not really challenging the clear and convincing evidence of the presumption of guilt for the trafficking, the F2." Hearing Tr. at 60. His argument, instead, is that the State did not prove he posed a danger to the community. In contradistinction, though, there was substantial evidence that he was pumping large quantities of illegal drugs like meth into the community. There can be no doubt that selling drugs poses a danger to the community. *See also United States v. Beard*, 528 F.Supp.3d 764, 774 (N.D.Ohio 2021) (sale of narcotics is an inherently dangerous activity and poses a danger to the community). Harrell's criminal history also pointed to his being a danger to the community, as he had previous convictions for serious felonies including receiving stolen property, failure to comply, aggravated robbery, and involuntary manslaughter.

{¶ 25} Finally, Harrell asserts that he could have been given an ankle monitor to limit him to specific locations. Detective Burch testified that the city would have had to spend a significant amount of time and resources to continually observe Harrell if he were released with a monitor. According to the detective, even if Harrell were released on home confinement, associates could come to his house, especially in the middle of the night. Detective Burch was confident that Harrell, if released, would continue to distribute drugs.

Based on the testimony and evidence presented, the trial court did not abuse its discretion in concluding that no release conditions could reasonably assure the safety of the community.

**{¶ 26}** The trial court did not abuse its discretion when it found by clear and convincing evidence that Harrell committed the offenses, that he poses a substantial risk of serious physical harm to any person or to the community, and that no release condition would reasonably assure the safety of the community. Harrell's second assignment of error is overruled.

IV.     **Conclusion**

**{¶ 27}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.